### 1194. ROYAL v. GRANT, by next friend.

1. An affidavit to foreclose a laborer's lien becomes mesne process by the filing of a counter-affidavit; and where the affiant lienor is a minor, this process is amendable by the appointment of a proper party as his next friend.

2. Unless his parental power has been lost or relinquished, a parent is entitled to the value of the services of his minor child, whether the contract for the services is made by the parent or by the minor; and even as to advances or payments made by an employer to a minor for necessaries, the burden is upon the employer to show that such were really necessary. But where a laborer's lien is foreclosed by a minor as in his own right, and in his lien-affidavit it is averred that the contract was made by him, and where thereafter, upon the issue formed by the filing of a counter-affidavit, his mother (who is vested with his control), consents to act as his prochein ami, evidence of payments made by the defendant employer to him are admissible, to show that the debt for which the lien is claimed has been diminished or extinguished. In such a case it must be conclusively presumed that the mother acquiesced in the contract made by her minor son, and consented to his receiving the proceeds of his labor, and thereby manumitted him, at least during the life of the contract; and the plaintiff also is estopped from asserting that any payments made him. on the contract are affected by his minority.

3. The evidence was sufficient to authorize the jury to sustain the plaintiff's contention as to the nature of the contract, rather than that of the defendant; but a new trial should have been granted, to enable the defendant to have his plea of payment fully presented to the jury.

Foreclosure of lien, from city court of Ashburn—Judge Hawkins. April 29, 1908.

Submitted July 15, 1908.—Decided February 16, 1909.

*R. L. Tipton, W. E. Talley,* for plaintiff in error.

*J. A. Comer,* contra.

RUSSELL, J. Ishmael Grant made an affidavit to foreclose a laborer's lien, alleging a contract between himself and Albert Royal, under which he was to work for Royal for $10 a month and his board, and that he had worked from January 1, 1907, until December 4, 1907, when Royal agreed for the contract to be at an end, thereby completing the contract. Royal made a counter-affidavit denying all the material allegations made in the affidavit of Grant, and setting up a different contract. When the case came on for trial it appeared that the plaintiff was a minor, sixteen years of age, under the control of his mother; and an amendment was made, adding after his name the words, "by his next friend,

Mary Royal" (his mother, who, it appears, has married Albert Royal's father), and the suit proceeded in the name of Ishmael Grant by Mary Royal, next friend. The jury found a verdict in favor of the plaintiff, for $100, and judgment was entered accordingly. The defendant moved for a new trial upon various grounds. The judge's charge to the jury was not specified as material to be sent up, and is not in the record, but its absence is immaterial, because, as to most of the excerpts complained of as not being pertinent and proper instructions under the pleadings and evidence, there is neither a specific exception nor a definite assignment of error. However, three points are properly insisted upon: that the court should not have allowed the amendment; that the charge of the court deprived the defendant of his defense of payment; and that the contract shown by the evidence is a different contract from that mentioned in the original affidavit. Upon an examination of the several grounds of the motion for new trial, we find that, except as above stated, the several assignments of error are either insufficient to present anything for the consideration of this court, or else wholly without merit.

1. The court properly allowed the amendment when it appeared that the plaintiff was a minor. The appointment of a next friend for the minor was essential to the further progress of the suit, and the amendment was expressly authorized by the Civil Code, §4947, which declares, that "a suit commenced and prosecuted by an infant alone is not void, and although the suit is defective in wanting a guardian or next friend, the defect is amendable before verdict and cured by verdict."

2. Some evidence was introduced showing that the mother had made a contract with the defendant for the son's services, and that she had never consented for the son to collect any portion of his wages. There was also some evidence introduced tending to show that some of the payments made to the minor plaintiff, and some of the articles advanced to him on his wages, were not necessaries. The introduction of this testimony was not excepted to; but objections are made to certain portions of the judge's charge, which we are constrained to hold well taken. We think the judge erred in instructing the jury that a minor can not make a contract in this State, under the law, without the consent of his parents or guardian. The rule as stated is abstractly correct,

but the statement is too broad where, as in the very case on trial, the plaintiff is prosecuting a claim for the recovery of the value of his services. Under the provisions of §2502 of the Civil Code, the child remains until majority under the control of the father, who is entitled to his services and the proceeds of his labor. This is the general rule; but this parental control may be lost, by voluntary contract, releasing the parental rights to a third person, or by failure of the father to provide necessaries for his child, or the father's abandonment of the family, or it may be relinquished, subject to revocation, by the consent of the parent that the child may receive the proceeds of his own labor. A minor too may receive and hold his earnings even against his parent or guardian, after his marriage with the consent of the parent. Parental control may also be lost by cruel treatment of the child, or be relinquished by consent to the adoption of the child by a third person. The broad statement that a minor can not make a contract without the consent of his parent or guardian is erroneous; and it is especially inapplicable in the present case. Ordinarily it would be proper to charge a jury upon this subject that a parent, unless his parental power has been lost or relinquished, is entitled to the value of the services of his minor child, whether the contract for the services was made by the parent or by the minor; but in the present case it must be remembered that the minor was asserting his own right to foreclose a lien as laborer, upon a contract which he himself had made, or, if it was first made by his mother, a contract in regard to which she acted merely as his agent, and not as his mother. It must also be borne in mind that the evidence disclosed that the plaintiff's father was dead; and his mother, being the parent entitled to his control, appears as his next friend. Certainly, then, neither the plaintiff nor his mother will be heard to assert that any payments which were actually made by the defendant to the plaintiff were void for the reason that the plaintiff's wages were payable to his mother. The court charged the jury, "If you should believe, from the evidence in this case, that there was a contract made between the plaintiff in this case and Albert Royal for services, and that Albert Royal paid the party who did the work, Ishmael Grant, without the consent of the party who contracted with him, that payment would not be a payment, under the law;

he would still be due the plaintiff for the services contracted for originally;" and also charged that "any payment made to this boy, if you believe the contract existed, would be void, as the boy is a minor."

In view of the pleadings in the case, both of these charges are error. The jury are told, in effect, that the prochein ami has, by the amendment allowed, become the real plaintiff in the case, and the charge is based upon the theory that the mother is proceeding (as she would have had the right to do if she had hired her son to Royal, instead of her son having made the contract himself) to foreclose a laborer's lien for the labor of her minor child. Under the pleadings, the plaintiff was the same after the appointment of his mother as next friend as he was before the allowance of the amendment to that effect. The charge of the court proceeded on the idea that the foreclosure had been instituted by the parent of the minor, and it fixed a rule which might apply between the parent of a minor and the employer of her minor child; but, as delivered, it must necessarily have confused the minds of the jury and prejudiced the defendant's defense. The charge of the court that "any payment made to this boy [the plaintiff], if you believe the contract existed, would be void, as the boy is a minor," wholly eliminated the plea of payment set up by the defendant. The action was proceeding in behalf of the plaintiff himself, it assumed that he made the contract and that all payments were to be made to him; and as it proceeded with his mother as next friend, she must be presumed to have adopted and ratified the contract made by the minor, and to have consented, not only to the contract, but also to the suit brought by her son. In the affidavit made to foreclose the laborer's lien it is averred that the contract was made by the minor, and it is therefore doubtful whether the case could proceed with any substitute for a plaintiff; but when the mother, vested with the minor's control, consented to act as his prochein ami, evidence of payments made by the defendant employer to the minor were admissible and competent to show that the debt for which the laborer's lien was claimed had been diminished or paid in full. Under the pleadings and the evidence, the plaintiff was estopped from asserting that any payments made him on the contract were affected by his minority.

3.   The contract alleged in the affidavit to foreclose the labor-

er's lien was fully supported by the evidence. It is true, the mother testified that the same contract was made with her, but it does not appear that this was not as agent acting in behalf of her son. It is also true that the plaintiff appears to have worked for some time before he knew what compensation he was to receive. Grant's mother seems to have been informed of the amount which the defendant thought proper compensation, and which he agreed he would pay before the laborer himself knew what he was to receive. He testified that he worked eleven months and one week with Albert Royal up to the time that Royal released him. His labor began January 3, and he lost only two days' time. He had worked up to April before Royal told him what he would give him. Then Royal said he would give him $10 a month and his board, and two acres of land for a cotton patch, and, if the two acres did not make a bale of cotton, he would give him a bale of cotton any way. Though no definite price was agreed upon between them until the plaintiff had worked three months, yet after the amount per month for the year's work was mutually agreed to as testified by the plaintiff, it would relate back to the beginning of his term of service, so as to include the labor already performed, as well as extend forward to the termination of the period in which he might labor. The evidence in behalf of the plaintiff, if believed by the jury in preference to that of the defendant, which presented an entirely different contract, would have supported a verdict finding in favor of the plaintiff's contention upon that subject; but in view of the errors pointed out in the second division of this opinion, a new trial must be had, especially for the reason that the defendant was deprived of the benefit of his plea of payment.                    *Judgment reversed.*